# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-24-00385-CV

**City of Austin, Appellant**

**v.**

**Katherine Michelle Miller, Appellee**

### FROM THE 98TH DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-24-001515, THE HONORABLE MAYA GUERRA GAMBLE, JUDGE PRESIDING

## O P I N I O N

The City of Austin (the City) appeals from the trial court's order denying the City's plea to the jurisdiction. *See* Tex. Civ. Prac. & Rem. Code § 51.014(a)(8) (authorizing interlocutory appeal from order denying plea to jurisdiction by governmental unit). Katherine Michelle Miller sued the City for personal injuries she sustained from a dog bite during an adoption event hosted by the City's Austin Animal Center (the Center). In one issue, the City contends that it is immune from the suit because it was performing a governmental function for which its immunity was not waived under the Texas Tort Claims Act (TTCA). *See generally id.* ch. 101. For the following reasons, we reverse in part the trial court's denial of the City's plea and affirm in part its denial.

## BACKGROUND

In her live petition, Miller alleges that she was injured by a dog named Fancy Gigi at a public adoption event hosted by the Center on April 1, 2023. Responding to the City's amended plea to the jurisdiction, Miller asserted that the event had included a handler and fifteen to twenty dogs spaced a few feet apart on the Center's lawn "to entice individuals to enter the facility." Miller alleges that as she approached Fancy Gigi, the dog lunged at her and "viciously attacked her arm," causing permanent injuries that required nine staples and will necessitate future treatments.

Miller further alleges that Fancy Gigi had fought with another dog ten minutes before attacking her, that only the other dog had been removed from the event, and that the City had been "aware of [Fancy Gigi]'s abnormally dangerous propensities yet allowed the animal to be unmuzzled and on a long enough leash to allow the animal to attack [] Miller." The Center's records show that Fancy Gigi had previously been aggressive to humans and other dogs and that approximately two months before the adoption event, a volunteer had stated that she "will need slow introductions and is DR[1] on outings towards dogs."

Miller alleges that the City waived its immunity for a claim of "injury arising out of a condition or use of tangible personal property." *See id.* § 101.021(2). Specifically, she argues that Fancy Gigi had "dangerous propensities abnormal to its class," that the City knew of the abnormally dangerous propensities, that the City "injured Ms. Miller through its negligent handling of [Fancy Gigi]," and that the City would be personally liable under Texas law were it a private person. In its plea to the jurisdiction, the City argued that "the City was not 'using' the

---

[1] This acronym is undefined in the record.

2

shelter dog in question which, categorically, is not tangible personal property under [subsection] 101.021(2)." *See id.*

Miller responded to the City's amended plea to the jurisdiction by listing the elements for strict-liability injury by a dangerous domesticated animal; asserting that Texas courts have consistently held that dogs are personal property; and arguing that the City had "used" Fancy Gigi "to entice individuals to visit the shelter, thereby garnering not just adoptions, but donations as well. The City of Austin picked the dogs and brought them out for public display to attract the public to attend their event." Miller also argued that the City had not addressed her contention that it waived immunity because her injury was caused by a condition of the City's property, namely, Fancy Gigi's "dangerous propensities." Miller attached to her response exhibits documenting prior observations by shelter staff that Fancy Gigi should have "limited handling due to [her] previous behavior," has a "low" level of "friendliness," was "not friendly with strangers," and "lunged and growled at a volunteer and a staff member" at a February 18, 2022 adoption event.

The trial court denied the City's amended plea to the jurisdiction after a hearing.[2] This appeal followed.

## DISCUSSION

### Standard of review

A challenge to a trial court's subject-matter jurisdiction is a question of law properly asserted in a plea to the jurisdiction. *Sampson v. University of Tex. at Austin*, 500 S.W.3d 380, 384 (Tex. 2016) (citing *Texas Dep't of Parks & Wildlife v. Miranda*,

---

[2] The record before us does not include a transcript of the hearing.

3

133 S.W.3d 217, 225–26 (Tex. 2004)).  When, as here, a plea to the jurisdiction challenges only the sufficiency of the pleadings, we review the trial court's ruling on the plea to the jurisdiction de novo, *see id.*, and must "determine if the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the cause," *Miranda*, 133 S.W.3d at 226 (citing *Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993)).

In reviewing a ruling on a plea to the jurisdiction, we construe the pleadings liberally in the plaintiff's favor, do not weigh the merits of claims, indulge every reasonable inference, and resolve any doubts in favor of jurisdiction.  *See id*. at 228; *County of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex. 2002).  To succeed, "[t]he party asserting the plea must establish an incurable jurisdictional defect apparent from the face of the pleadings that makes it impossible for the plaintiff's petition to confer jurisdiction on the trial court."  *Miranda*, 133 S.W.3d at 228.  If a plaintiff fails to plead facts sufficient to establish jurisdiction, but the petition does not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency, and the plaintiff should be afforded an opportunity to amend.  *Id.* at 226–27; *Texas Tech Univ. Sys. v. Martinez*, 691 S.W.3d 415, 419 (Tex. 2024).  If the pleadings affirmatively negate the existence of jurisdiction, a plea to the jurisdiction may be granted without allowing the plaintiff an opportunity to amend.  *Miranda*, 133 S.W.3d at 227.

### *Governmental immunity*

The City, as a political subdivision of the state, is immune from suit and liability unless the state consents.  *City of Austin v. Anam*, 623 S.W.3d 15, 17 (Tex. App.—Austin 2020, no pet.) (citing *City of Watauga v. Gordon*, 434 S.W.3d 586, 589 (Tex. 2014)); *see* Tex. Civ. Prac. & Rem. Code § 101.001(3)(B) ("'Governmental unit' means a political subdivision of

4

this state, including any city."). "Whether governmental immunity has been waived in a given case implicates subject-matter jurisdiction," *San Jacinto River Auth. v. City of Conroe*, 688 S.W.3d 124, 130 (Tex. 2024), and "[g]overnmental immunity defeats a court's jurisdiction," *Anam*, 623 S.W.3d at 17 (citing *Dallas Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 542 (Tex. 2003)). "Where a government entity challenges jurisdiction on the basis of immunity, 'the plaintiff must affirmatively demonstrate the court's jurisdiction by alleging a valid waiver of immunity.'" *Ryder Integrated Logistics, Inc. v. Fayette County*, 453 S.W.3d 922, 927 (Tex. 2015) (quoting *Whitley*, 104 S.W.3d at 542).

The TTCA expressly provides a limited waiver of immunity in three areas when the statutory requirements are met: (1) use of publicly owned automobiles; (2) injuries arising out of a condition or use of tangible personal property; and (3) premises defects. *Sampson*, 500 S.W.3d at 384; *see* Tex. Civ. Prac. & Rem. Code §§ 101.021, .025. Specifically, subsection 101.021(2) of the TTCA provides that a governmental unit "is liable for . . . personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law." Tex. Civ. Prac. & Rem. Code § 101.021(2).[3] The TTCA "does not create a cause of action; it merely waives sovereign immunity as a bar to a suit that would otherwise exist." *Sampson*, 500 S.W.3d at 387 (quoting *City of Tyler v. Likes*, 962 S.W.2d 489, 494 (Tex. 1997)).

---

[3] Although the TTCA waives cities' immunity only for their "governmental functions" and not for their "proprietary functions," the parties agree on appeal that the City's actions in this case were performed pursuant to a governmental function, namely, animal control. *See* Tex. Civ. Prac. & Rem. Code § 101.0215(a)(33); *see also City of Elgin v. Reagan*, No. 03-06-00504-CV, 2009 WL 483344, at *3 (Tex. App.—Austin Feb. 26, 2009, no pet.) (mem. op.) (concluding that "allowing the adoption of animals from the City's shelter is an activity so closely related to animal control that it is a governmental function").

In one issue, the City contends that the trial court erred in denying its plea to the jurisdiction as to Miller's claims based on strict-liability and common-law negligence theories because the City enjoys governmental immunity and there is no applicable waiver of immunity.

*Waiver for strict-liability claim*

Miller alleges that were the City a private individual, it would be strictly liable for injury caused by a dangerous domesticated animal. *See Allen ex rel. B.A. v. Albin*, 97 S.W.3d 655, 660 (Tex. App.—Waco 2002, no pet.) (listing "elements of a strict liability claim for injury by a dangerous domesticated animal"); *see also Marshall v. Ranne*, 511 S.W.2d 255, 258 (Tex. 1974) (approving rule "that suits for damages caused by vicious animals should be governed by principles of strict liability" but explaining that establishment of cause of action for strict liability does not preclude claim for negligent handling). She alleges that the TTCA waives the City's immunity for her strict-liability claim because Fancy Gigi had abnormally dangerous propensities, which constitutes a "condition" of personal property that caused her injuries. *See* Tex. Civ. Prac. & Rem. Code § 101.021(2).

Strict-liability claims require the lesser causative showing of "producing cause" rather than the higher standard of proximate cause required for negligence claims. *See Union Pump Co. v. Allbritton*, 898 S.W.2d 773, 775 (Tex. 1995) ("Proximate and producing cause differ in that foreseeability is an element of proximate cause, but not of producing cause."), *abrogated on other grounds by Ford Motor Co. v. Ledesma*, 242 S.W.3d 32 (Tex. 2007). But the supreme court has read into Subsection 101.021(2) a requirement that for immunity to be waived, "injury or death must be *proximately caused* by the condition or use of tangible property." *Dallas Cnty. Mental Health & Mental Retardation v. Bossley*, 968 S.W.2d 339, 343

6

(Tex. 1998) (emphasis added). Moreover, courts will not determine that there has been a legislative waiver of immunity unless there is a "clear and unambiguous legislative expression" of such. *Kerrville State Hosp. v. Fernandez*, 28 S.W.3d 1, 3 (Tex. 2000); *see Sampson*, 500 S.W.3d at 384 ("The state or governmental unit can be sued only if the Legislature waives immunity in 'clear and unambiguous language.'" (quoting Tex. Gov't Code § 311.034)); *Texas Facilities Comm'n v. Speer*, 559 S.W.3d 245, 249 (Tex. App.—Austin 2018, no pet.) (construing section 311.034 as "effectively a presumption in favor of retained immunity if the statute is ambiguous").

Subsection 101.021(2)'s text does not clearly and unambiguously waive liability for strict-liability claims, and the supreme court has construed that subsection to require a showing of proximate cause, *see Bossley*, 968 S.W.2d at 343, foreclosing the subsection's waiver of liability for strict-liability claims. We accordingly hold that the TTCA does not waive the City's immunity for Miller's strict-liability claim. *See City of Elgin v. Reagan*, No. 03-06-00504-CV, 2009 WL 483344, at *3 (Tex. App.—Austin Feb. 26, 2009, no pet.) (mem. op.) (expressing doubt that TTCA waives immunity for strict-liability claims and determining that, "even if the City could be strictly liable," plaintiff still must prove that dog-bite injuries were caused by City's "use" of dog); *see also University of Tex. Health Sci. Ctr. at Houston v. DeSoto*, 401 S.W.3d 319, 327 (Tex. App.—Houston [14th Dist.] 2013, pet. denied) (holding that TTCA does not waive immunity for strict-liability claims); *University of N. Tex. v. Harvey*, 124 S.W.3d 216, 224 (Tex. App.—Fort Worth 2003, pet. denied) (same); *EPGT Tex. Pipeline, L.P. v. Harris Cnty. Flood Control Dist.*, 176 S.W.3d 330, 339 (Tex. App.—Houston [1st Dist.] 2004, pet. dism'd) (same). *But see City of Dallas v. Heard*, 252 S.W.3d 98, 112 (Tex. App.—Dallas 2008, pet. denied) (determining that, in "unique context" of facts alleged, TTCA waived immunity for

7

strict-liability claim based on injuries caused by gorilla's escape from city's zoo enclosure). We sustain the City's issue as to Miller's strict-liability claim.

### *Waiver for condition or use of property*

In addition to her allegation that the City is strictly liable, Miller alleges that were the City a private individual, it would be liable for negligent handling of an animal. *See City of Houston v. Jenkins*, 363 S.W.3d 808, 816 (Tex. App.—Houston [14th Dist.] 2012, pet. denied) (reciting, in dog-bite case, elements for claim of common-law negligent handling of animal). Thus, Subsection 101.021(2) waives the City's immunity for Miller's injuries if they were proximately "caused by a condition or use of tangible personal . . . property," and we consider whether Miller pleaded facts sufficient to trigger waiver of the City's immunity under the subsection for her common-law negligence claims. *See* Tex. Civ. Prac. & Rem. Code § 101.021(2); *Bossley*, 968 S.W.2d at 343; *see also Strickland v. Medlen*, 397 S.W.3d 184, 188 (Tex. 2013) (noting that Texas law has long considered pets to be personal property).

#### *Use of property*

Regarding the use of tangible personal property, Miller alleges that the City was using Fancy Gigi by selecting and publicly displaying the dog on the Center's front lawn "to entice individuals to visit the shelter, thereby garnering not just adoptions, but donations as well." Miller alleges that Fancy Gigi was unmuzzled and on a leash long enough to allow Fancy Gigi to—"without warning"—lunge at her as she approached the dog. The supreme court has defined the term "use" in the TTCA context to mean "to put or bring into action or service; to employ for or apply to a given purpose." *Texas Dep't of Crim. Just. v. Miller*, 51 S.W.3d 583, 588 (Tex. 2001). A governmental unit does not "use" property where it only provides access to

8

property, makes it available, or allows someone else to use it. *See Harris County v. Annab*, 547 S.W.3d 609, 613 (Tex. 2018) ("We consistently have defined 'use' to be more than making tangible personal property available for use by another."); *Rusk State Hosp. v. Black*, 392 S.W.3d 88, 98 (Tex. 2012). Rather, the governmental unit itself must be the user. *San Antonio State Hosp. v. Cowan*, 128 S.W.3d 244, 246 (Tex. 2004). Additionally, it is not enough that tangible personal property is "merely involved" in the alleged injury; rather, the property's use must have actually caused the injury. *Miller*, 51 S.W.3d at 588. When determining whether property is in "use" for purposes of the TTCA, we consider the purpose for the property, whether the use of the property was a direct factor in the injury, and whether the property did more than merely furnish the condition that made the injury possible. *City of Houston v. Davis*, 294 S.W.3d 609, 612 (Tex. App.—Houston [1st Dist.] 2009, no pet.). To show "use" of property, it is not necessary to show actual physical possession of the property, and we must take into account "the entirety of the circumstances under which the incident arose." *Id.* (quoting *Texas State Tech. Coll. v. Beavers*, 218 S.W.3d 258, 263 (Tex. App.—Texarkana 2007, no pet.)).

Liberally construing the pleadings in Miller's favor and indulging every reasonable inference to support jurisdiction, as we must, *see Miranda*, 133 S.W.3d at 228, we conclude that the gravamen of Miller's complaint is not that the City provided Fancy Gigi to her for her to use or merely made Fancy Gigi available but, rather, that the City put the dog into service and employed it for the purpose of enticing individuals to visit the shelter, adopt dogs, and make donations. In other words, the City used the dog to carry out the performance of its animal-control duties, including to find homes for pets, and to attract the public in that effort. We find such alleged use analogous to the City of Houston's use of a dog by a police officer

9

where such dog's purpose was to "assist in the officer's performance of his police duties, which the officer was carrying out when he stopped to help" the plaintiff, even though the officer did not verbally command or physically lead the dog to attack the plaintiff. *See Davis*, 294 S.W.3d at 612–13 (holding that plaintiff pleaded valid waiver of immunity when he alleged that officer negligently used police dog without properly restraining it in police car while officer exited to assist plaintiff, which was substantial factor in dog's escaping car and causing plaintiff's injuries); *see also Heard*, 252 S.W.3d at 110 (concluding that plaintiff established waiver of immunity by alleging that city zoo "used" gorilla as attraction to generate revenue and that gorilla's escape from habitat and attack on zoo guest was actionable). Considering the entirety of the circumstances giving rise to the incident at issue—including the City employees' alleged, documented knowledge of Fancy Gigi's abnormal aggressiveness, especially in situations involving unfamiliar people and other animals, and when an incident of such aggressiveness occurred only minutes before the subject incident—we conclude that Miller has alleged a waiver of the City's immunity under the "use" prong in subsection 101.021(2). Having reached the conclusion that Miller sufficiently alleged that the City's immunity is waived for her claim of injury arising out of a use of tangible personal property, we need not address the parties' arguments regarding whether Fancy Gigi's alleged dangerous condition waived the City's immunity.

### *Proximate cause*

For immunity to be waived under Subsection 101.021(2), the injury or death must be proximately caused by the condition or use of the tangible property. *See Bossley*, 968 S.W.2d at 343; *Anam*, 623 S.W.3d at 18. The two elements of proximate cause are "cause in fact and

10

foreseeability." *Rattray v. City of Brownsville*, 662 S.W.3d 860, 874 (Tex. 2023). "Cause in fact is established when 'the act or omission was a substantial factor in bringing about the injury' and, without it, the harm would not have occurred." *Id.* (quoting *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 549 (Tex. 1985)). "Foreseeability requires that a person of ordinary intelligence should have anticipated the danger created by a negligent act or omission." *Anam*, 623 S.W.3d at 18 (citing *Doe v. Boys Club of Greater Dall., Inc.*, 907 S.W.2d 472, 477 (Tex. 1995)). The anticipated danger need only be "general," not "the exact sequence of events that produced the harm." *University of Tex. M.D. Anderson Cancer Ctr. v. McKenzie*, 578 S.W.3d 506, 519 (Tex. 2019). "In making this causal assessment, particularly in the Tort Claims Act context, we look to the record and pleadings to determine if the alleged cause is too geographically or temporally attenuated from the alleged effect." *Rattray*, 662 S.W.3d at 874.

We conclude that Miller has sufficiently alleged that the City's use of Fancy Gigi to attract the public to its adoption event proximately caused Miller's injuries resulting from Fancy Gigi's attack. Miller's injuries were not attenuated geographically or temporally from the City's use of Fancy Gigi to attract the public to the adoption event—the attack and resulting injuries occurred contemporaneously with the event and with the City's use of the dog for that purpose. Fancy Gigi's appearance at the adoption event—allegedly unmuzzled, on a leash long enough to allow an attack, and with known dangerous propensities—was a substantial factor in bringing about Miller's injury, without which Miller would not have sustained the harm alleged. *See id.* Furthermore, the facts that Miller has alleged support the conclusion that the attack and resulting injuries were a foreseeable consequence of the City's use of Fancy Gigi in her condition with known dangerous propensities. If Miller proves her case, the City will be liable—as would an ordinary person under the common law—for its negligence in proximately causing

11

injury to Miller by allowing the allegedly dangerous dog to be near and have essentially unfettered interaction with the unsuspecting public. *See Rodriguez v. Haddock*, No. 2-01-386-CV, 2003 WL 1784923, at *2 (Tex. App.—Fort Worth Apr. 3, 2003, no pet.) (mem. op.).

Miller's allegations are sufficient to bring her "use" claim under the TTCA's waiver of immunity, and the trial court did not err to the extent it denied the City's plea to the jurisdiction with respect to Miller's negligence claims. We accordingly overrule the City's issue as it pertains to those claims.

## CONCLUSION

We affirm in part the trial court's denial of the City's plea to the jurisdiction as to Miller's common-law claim for negligent handling of a domesticated animal. We reverse in part the trial court's denial of the City's plea to the jurisdiction as to Miller's claim for strict liability and render judgment dismissing that claim.

_____

Karin Crump, Justice

Before Justices Theofanis, Crump, and Ellis

Affirmed in Part; Reversed and Rendered in Part

Filed: May 1, 2025

12